**The UNITED STATES of America, Plaintiff-Appellee,**

v.

**Hector G. CAMACHO, Defendant-Appellant.**

**The UNITED STATES of America, Plaintiff-Appellee,**

v.

**Jose Dolores RAYGOZA, Defendant-Appellant.**

**Nos. 75–1557, 75–1447.**

United States Court of Appeals, Ninth Circuit.

Jan. 5, 1976.

Rehearing Denied Feb. 9, 1976.

Certiorari Denied May 24, 1976.
See 96 S.Ct. 2208.

Stephen Lewis Parker (argued), Phoenix, Ariz., for Raygoza.

Atmore Baggot (argued), Phoenix, Ariz., for Camacho.

Ron Jennings, Asst. U. S. Atty. (argued), Phoenix, Ariz., for the United States.

## OPINION

Before CHAMBERS and HUFSTEDLER, Circuit Judges, and JAMESON, * District Judge.

* Honorable W. J. Jameson, United States Senior District Judge for the District of Montana, sitting by designation.

JAMESON, District Judge.

In a consolidated jury trial appellants were convicted of violations of the Gun Control Act of 1968—on one count of conspiracy, in violation of 18 U.S.C. § 371, and three substantive counts of the sale and delivery of firearms to non-residents by appellant Camacho, aided and abetted by appellant Raygoza,[1] in violation of 18 U.S.C. § 922(b)(3) and 2.[2] We affirm both convictions.

## Factual Background

Camacho is a federally licensed firearms dealer who has a small store in Somerton, Arizona near the Mexican border. On August 21, 1974 Lieutenant Pena, a Mexican Army officer on assignment with the Alcohol, Tobacco, and Firearms Division of the U.S. Department of the Treasury, went to Camacho's store and told Camacho that he was from Mexico and was interested in purchasing firearms. Camacho asked Pena if he had someone to sign the registration forms required by the Gun Control Act. Pena stated that he did not. At about that time Raygoza came into the store. Camacho suggested that Pena should ask Raygoza to sign the form. Raygoza declined, explaining that he had done so on too many previous occasions. At Camacho's suggestion Pena left with Raygoza to find someone else to sign. Raygoza drove Pena to find Gonzalo Quintero. Quintero agreed to sign the forms after Raygoza vouched for Pena. At the store Camacho had Quintero sign for two weapons. Pena paid Camacho for the guns and gave Quintero twenty dollars for his signature.

The next day Pena went to Camacho's store to purchase an additional gun. Within a short time Raygoza arrived with Pedro Rivas. Raygoza had approached Rivas earlier that day about signing registration forms for Pena. Rivas signed the form, and Pena paid Camacho for the gun and Rivas for his signature.

On October 8, Pena, accompanied by a federal agent named Cabrerra, returned to Camacho's store. Pena introduced Cabrerra as a resident of Peru. Pena then purchased another weapon which Camacho offered to hold until Pena could find someone to sign the registration form. Pena and Cabrerra went to Raygoza's house, where Raygoza agreed to get someone to sign the forms and suggested that Pena buy more than one weapon. They agreed to meet the next afternoon at Camacho's store.

On October 9 the two agents, after first visiting the store and selecting the weapons to be purchased went to Raygoza's house. The three then picked up Chavez and Rivas, both of whom agreed to sign for Pena. The men went back to the store where Pena purchased a total of ten weapons, Rivas and Chavez signing for five guns each. Camacho told Chavez and Rivas to have Pena sign on the back of the forms that Pena had received the guns as gifts. Pena told Camacho he would not sign anything, and Camacho replied that he would hold the forms for a while so that it would not seem that Chavez and Rivas had purchased so many weapons. Camacho, Raygoza, Quintero, Chavez and Rivas were then placed under arrest.

## Camacho Appeal

Camacho contends that 18 U.S.C. § 922(b)(3) does not prohibit a licensed dealer from selling firearms to non-resident aliens, but only to persons who are

---

1. Three other defendants were charged with conspiracy and aiding and abetting. One, Gonzalo Quintero, was convicted on the three counts on which he was charged, but did not appeal. The indictment was dismissed as to the other two defendants, Ramon Chavez and Pedro Rivas, when they testified for the Government.

2. § 922(b)(3) provides in pertinent part:

 "(b) It shall be unlawful for any . . . licensed dealer . . . to sell or deliver

 . . . .

 "(3) any firearm to any person who the licensee knows or has reasonable cause to believe does not reside in . . . the State in which the licensee's place of business is located. . . ."

residents of another state within the United States. Appellant's argument is based in large part on cases construing other sections of the Omnibus Crime Control and Safe Streets Act of 1968 and amendments thereto contained in the Gun Control Act of 1968 relating to the sale and possession of firearms, where the statutes were held to be ambiguous. These cases are distinguishable.[3] Section 922(b)(3) is clear and unambiguous. It provides that it shall be unlawful for a licensed dealer to sell or deliver any firearm to any person who the licensee knows or has reasonable cause to believe does not reside in the state in which the licensee's place of business is located.

Following the definition of "state" in 26 C.F.R. Section 178.11, the trial court instructed the jury:

"The term 'state of residence' is defined as follows:

'The State in which an individual regularly resides, or maintains his home, or if such person is on active duty as a member of the United States Armed Forces, the State in which his permanent duty station is located: *Provided,* That an alien who is legally in the United States shall be considered to be a resident of the State in which (a) he is residing and has so resided for a period of at least 90 days prior to the date of sale or delivery of a firearm or ammunition. Temporary presence in a State does not make the State of temporary presence the State of residence.' "

Camacho's place of business was in the State of Arizona. Pena, when he purchased the guns, was a resident of Mexico. He was an alien who had not established residence in Arizona. Camacho had reason to believe that Pena did not reside in Arizona. Under the clear wording of the statute, the sales were prohibited.

It is clear from the legislative history of the Gun Control Act of 1968 that Congress intended comprehensive federal control over interstate and foreign commerce in firearms to assist the states to cope with firearms traffic. The Senate Report reads in pertinent part:

"The existing Federal controls over interstate and foreign commerce in firearms are not sufficient to enable the States to effectively cope with the firearms traffic within their own borders through the exercise of their police power. Only through adequate Federal control over interstate and foreign commerce in firearms, and over all persons engaging in the business of importing, manufacturing, or dealing in firearms, can this problem be dealt with . . ." S.R. 1097, 90th Cong., 2d Sess. (1968), 2 U.S.Code Cong. & Admin.News p. 2114.

With this stated legislative purpose in mind, we turn to the cases which Camacho contends lend support to his position that § 922(b)(3) applies only to residents of another state. In *United States v. Bass,* 404 U.S. 336, 92 S.Ct. 515, 30 L.Ed.2d 488 (1971) the Court construed § 1202(a)(1) of the Omnibus Crime Control and Safe Streets Act, providing that a person convicted of a felony "who receives, possesses . . . or transports in commerce or affecting commerce . . . any firearm" shall be punished as therein provided. The Court held that the ambiguity of the Section (as to whether receipt or possession of a firearm must be shown in an individual prosecution to have been connected with interstate commerce) must be resolved in favor of the narrow reading requiring that nexus with interstate commerce be shown with respect to all three offenses embraced by the provision. In the "absence of a clearer direction from Congress", the Court refused to adopt the broader meaning, which "would mark a major inroad into a domain traditionally left to the States". 404 U.S. at 339, 92 S.Ct. at 518. Camacho argues that since

---

**3.** As this court recognized in *United States v. Redus,* 9 Cir., 469 F.2d 185 (1972), the construction of one section of the Omnibus Crime Control and Safe Streets Act or Gun Control Act is not necessarily applicable to another section of either act. Each section is worded differently and is concerned with a different problem.

the State of Arizona does not restrict firearm sales, § 922(b)(3) must also be narrowly construed. However, as this court held in *Redus, supra,* 469 F.2d at 187, in construing § 922(a)(1), *Bass* is distinguishable because the "statute before the court, unlike the one considered in *Bass,* is unambiguous". The same is true here with respect to § 922(b)(3). The direction from Congress is clear.

Camacho's reliance on *United States v. Kraase,* 484 F.2d 549 (7 Cir. 1973) is also misplaced. In *Kraase* the court construed § 922(a)(5), which provides in pertinent part that any person who is not a licensed dealer may not sell any firearm to any person (other than one who is licensed) "who the transferor knows or has reasonable cause to believe resides in any state other than that in which the transferor resides . . ." The purchaser represented himself to be a resident of another state, but was in fact a resident of the same state as the seller. Noting that § 922(a)(5) was ambiguous, the court held that an unlicensed seller could not be convicted where both the purchaser and seller are residents of the same state, even though the "seller has reasonable cause to believe otherwise." [4] Section 922(b)(3), relating to licensed dealers, prohibits a sale to any person not residing in the licensee's state and does not require, as does § 922(a)(5), that the purchaser be a resident of another state before the sale is illegal.

An alien who has not established residence in the state where the licensed dealer is located falls within the class of persons to whom the dealer is not permitted to sell firearms under § 922(b)(3). Under appellant's construction of the section aliens would be permitted to purchase firearms in any state, whereas United States citizens could do so only when they resided in the same state as the dealer. Here Camacho knew that Pena was a resident of Mexico and that the sales were illegal under the Gun

Control Act. At the time of each sale Camacho insisted that a resident of Arizona sign the registration forms before completing the sale and delivery to Pena. We reject the contention that the sales were not prohibited by § 922(b)(3).

### Raygoza Appeal

Raygoza contends that (1) there is insufficient evidence to support the judgment that Raygoza aided and abetted Camacho; (2) the court abused its discretion in failing to dismiss Count I of the indictment, charging conspiracy; (3) there is insufficient evidence to support the judgment that Raygoza conspired with Camacho; and (4) the court abused its discretion in denying Raygoza's motion for severance.

a. Sufficiency of Evidence of Aiding and Abetting

Raygoza argues that "there is no evidence that Raygoza aided and abetted" Camacho in selling and delivering the firearms, but rather that the Government's evidence showed that Raygoza aided and abetted Pena in purchasing the firearms.

■ The parties agree that mere presence at the scene of a crime does not make one an aider and abetter, and that "guilt cannot be established by mere association". *Ramirez v. United States,* 363 F.2d 3, 34 (9 Cir. 1966). As the Supreme Court stated in *Nye & Nissen v. United States,* 336 U.S. 613, 619, 69 S.Ct. 766, 769, 93 L.Ed. 919 (1949):

"In order to aid and abet another to commit a crime it is necessary that a defendant 'in some sort associate himself with the venture, that he participate in it as in something that he wishes to bring about, that he seek by his action to make it succeed.' L. Hand, J., in *United States v. Peoni,* 2 Cir., 100 F.2d 401, 402."

■ There was substantial evidence that Raygoza participated with Camacho

---

4. But *see United States v. Colicchio,* 470 F.2d 977, 979 (4 Cir. 1972), where the court held that where the seller had reasonable cause to believe the purchaser was not a resident of the same state, even though in fact he was, § 922(a)(5) covered the sales.

in the illegal sale and delivery of the firearms. Raygoza was present at Camacho's store when the sales were made. When Pena first came to Camacho to purchase the weapons, Raygoza entered the store, and Camacho suggested that Pena request Raygoza to sign the registration forms. Raygoza refused, stating that he "had already given out about 200 signatures", and Camacho remembered his doing so. Camacho told Pena to go with Raygoza to get the necessary signatures. Pena did so and Raygoza subsequently arranged with Quintero, Rivas, and Chavez to sign forms for the purchase of firearms on three different occasions. Raygoza told Pena that he knew what they were doing was a crime. We are unable to accept Raygoza's argument that he was aiding and abetting Pena rather than Camacho. Viewing the evidence in the light most favorable to the Government, as required by *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942), the jury could rationally conclude beyond a reasonable doubt that Raygoza was aiding and abetting Camacho in the illegal sale and delivery of firearms.[5]

b. Sufficiency of Count I of the Indictment

 Raygoza contends that Count I of the indictment charging him with conspiracy was fatally defective in that it "does not specifically state that the object of the conspiracy was for Camacho to sell the firearms" but rather states that the "object of the conspiracy was for one or more of the conspirators to sell and deliver the firearms". This contention is without merit. Count I of the indictment charges that Camacho, "a licensed federal firearms dealer", Raygoza, Quintero, Rivas and Chavez conspired "To wilfully and knowingly sell and deliver, and aid and abet in the selling and delivery firearms to individuals whom they knew or had reasonable cause to believe did not reside in the state in which the federal firearms dealer's place of business was located, that being the State of Arizona, in violation of Title 18, United States Code, Sections 922(b)(3) and 2." The only reasonable construction of Count I is that it charges a conspiracy for the sale and delivery of firearms by Camacho, the licensed dealer, aided and abetted by the other defendants. The indictment "sufficiently apprises the defendant of what he must be prepared to meet, and, in case any other proceedings are taken against him for a similar offense . . . the record shows with accuracy to what extent he may plead a formal acquittal or conviction." *United States v. Debrow*, 346 U.S. 374, 376, 74 S.Ct. 113, 115, 98 L.Ed. 92 (1953).

c. Sufficiency of Evidence of Conspiracy

 Raygoza next argues that there is no evidence that "Raygoza entered into an agreement with Camacho". It is well established that a conspiracy may be proved by circumstantial evidence and that to "constitute an unlawful conspiracy no formal agreement is necessary". *Blumenthal v. United States*, 158 F.2d 883, 889 (9 Cir. 1946), aff'd 332 U.S. 539, 68 S.Ct. 248, 92 L.Ed. 154 (1957).[6] An agreement constituting a conspiracy may be inferred from acts of the parties. *United States v. Schroeder*, 433 F.2d 846, 849 (8 Cir. 1970), cert. denied, 400 U.S. 1024, 91 S.Ct. 590, 27 L.Ed.2d 636 (1970). "[T]he agreement may be shown 'if there be concert of action, all the parties working together understandingly, with a single design for the accomplishment of a common purpose.' *Fowler v. United States*, (C.C.A.9) 273 F. 15, 19." *Marino v. United States*, 91 F.2d 691, 694 (9 Cir. 1937).[7] The jury could reasonably infer

---

**5.** See *United States v. Nelson*, 419 F.2d 1237, 1241 (9 Cir. 1969), where this court recognized also that "it is the exclusive function of the jury to determine the credibility of witnesses, resolve evidentiary conflicts, and draw reasonable inferences from proven facts."

**6.** See also *Pereira v. United States*, 347 U.S. 1, 74 S.Ct. 358, 98 L.Ed. 435 (1954); *Davenport v. United States*, 260 F.2d 591 (9 Cir. 1958).

**7.** See also *United States v. Varelli*, 407 F.2d 735, 741–742 (7 Cir. 1969); *United States v. Mendez*, 496 F.2d 128 (7 Cir. 1974).

that the repeated transactions in which Raygoza participated would not have taken place in the absence of an agreement among the defendants, and particularly between Camacho and Raygoza.

■ Nor is there merit in Raygoza's contention that if a conspiracy can be found, there were several conspiracies and not just one. It is not necessary for each defendant to participate in all of the overt acts alleged in the indictment. Even though each defendant plays a different role and may have had dissimilar motives for participating in the transaction, this does not mean that a single conspiracy did not exist. *United States v. Jones*, 425 F.2d 1048, 1051 (9 Cir. 1970). Viewing the evidence as a whole in the light most favorable to the Government, there was a rational basis for the jury to find that a single conspiracy did exist and that Raygoza was a knowing participant in it.

d. Denial of Motion for Severance

■ The granting or denial of a motion for the separate trial of jointly-indicted defendants rests within the sound discretion of the trial court. *Opper v. United States*, 348 U.S. 84, 95, 75 S.Ct. 158, 99 L.Ed. 101 (1954). Joint trials are the rule rather than the exception; and there is a "substantial public interest" in the joint trial of persons charged with committing the same offense or with being accessory to its commission. *Parker v. United States,* 404 F.2d 1193, 1196 (9 Cir. 1968). The decision of a trial judge denying a motion to sever will not be overturned on appeal unless there is an abuse of discretion. The trial court "need not have exercised its discretion to order separate trials, unless a joint trial was manifestly prejudicial". *United States v. Cozzetti,* 441 F.2d 344, 349 (9 Cir. 1971).

■ Appellant Raygoza has failed to show that he was prejudiced by the joint trial. All of the defendants had an opportunity to cross examine all of the witnesses and to present their individual defenses. Camacho and Raygoza were represented by separate counsel. There was no Sixth Amendment confrontation problem as found in *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), which would warrant a severance. *See, United States v. Martinez,* 9 Cir., 429 F.2d 971, 975 (1970). The jury was properly instructed to apply the evidence separately against each defendant. We find no abuse of discretion in the denial of the motion for severance.

The judgments are affirmed.