UNITED STATES of America, Appellant,

v.

Graham Johnny CRUZ, Appellee.

No. 75–2217.

United States Court of Appeals,
Ninth Circuit.

June 1, 1976.

Gary K. Green (argued), of Green & Greenman, San Diego, Cal., for appellant.

Harry D. Steward, Atty. (argued), San Diego, Cal., for appellee.

Jeffrey F. Arbetman, Asst. U. S. Atty., argued, Terry J. Knoepp, U. S. Atty., Jeffrey F. Arbetman, Asst. U. S. Atty., on the brief, San Diego, Cal., for plaintiff-appellee.

## OPINION

Before WRIGHT and KILKENNY, Circuit Judges, and CHRISTENSEN, District Judge.[*]

KILKENNY, Circuit Judge:

Appellant was indicted, tried by a jury, and convicted of conspiracy in violation of 18 U.S.C. § 371 as charged in Count One and illegal exportation of firearms in violation of 22 U.S.C. § 401 and § 1934 and 18 U.S.C. § 2, as charged in Count Three of the indictment. We affirm.

## BACKGROUND

Appellant was the owner of GunCo Enterprises, a merchandising establishment doing business in San Diego. Coconspirator Guevara was the manager of GunCo. Co-defendant Bailey was an individual who wished to sell his gun collection. Bailey was granted a severance upon agreement to testify for the government.

Even briefly summarized, the evidence against appellant is substantial. Special Agent Wolf of the Bureau of Alcohol, Tobacco and Firearms [ATF] met appellant at GunCo when he issued him a Federal Firearms License. At this time,[1] the record keeping requirements of a licensee were explained by Wolf to appellant and the latter acknowledged he understood them. On a later visit, Wolf informed appellant that it would be a violation to sell guns outside the business premises or to a citizen of Mexico.

A few weeks later, on March 26, 1974, Pina-Lopez, an officer in the Mexican Army, working as an undercover agent for ATF went to GunCo. He testified that appellant waited on him and sold him a box of cartridges, at which time Pina asked to purchase a gun. In response, appellant asked if Pina were a resident of the United States and when the latter said "No," appellant explained he could not sell him a weapon and went to wait on another customer. However, Pina persisted in his effort to purchase a gun by talking to store manager Guevara, who, after some discussion, said he would see if he could locate a weapon. A short time later, appellant approached Pina with a proposition to sell him two new .38 caliber guns. Guevara, who was present, suggested that Pina should return the next day.

On the following evening after arranging a meeting with Guevara over the phone, Pina returned to GunCo. When appellant asked Pina why he hadn't brought all the money, Pina told him that he was in partnership with his brother, who had not been able to come because of passport trouble. Pina was told by appellant that he should have all the money so that he could buy both guns at one time, "[o]therwise they would find out that it was coming and going." At the same time, Pina said that his brother was suspicious and gave him only the amount of money which would permit him to see the quality of the weapons. This conversation was with appellant and Guevara, both being present. After additional discussion, Pina arranged to purchase a .38 caliber gun which was delivered to him by Guevara, at which time there was a discussion about a later purchase of a .22 caliber. Guevara was paid $115.00 for the gun.

On March 29th, Pina returned to GunCo and discussed future purchases with Guevara. Appellant was present and listened to the conversation. As an outgrowth of the conversation, appellant determined that Pina was interested in a Ruger gun. He left the shop and returned in about 20 minutes. Appellant then suggested they go out

[*] The Honorable A. Sherman Christensen, Senior District Judge for the District of Utah, sitting by designation.

1. March, 1974.

for an ice cream. When Pina had followed appellant's car down the street a few blocks, he was invited to get in and told that the Ruger was under the seat. Pina then purchased the gun from appellant for cash. On the way back to GunCo appellant said he could supply Pina with cartridges for the guns that Guevara had sold him.

The following April 2nd, Pina and Ramos, another ATF agent who was posing as Pina's brother went to GunCo. Guevara took them to his house to discuss weapons and they purchased another .38 caliber weapon. Appellant was in the store, but did not talk to them. Ramos and Pina returned to GunCo on April 12th to bargain for the additional weapons which had been mentioned in the April 2nd conversation. Appellant and Guevara were both present. After Guevara made a phone call to his contact, he arranged a meeting for that evening. Appellant was present and overheard these conversations. Later that evening Guevara was arrested at his house along with codefendant Bailey, who had arranged with Guevara to sell his gun collection.

Bailey, when called as a witness for the government, over appellant's objection, testified that on April 12th, Guevara called him with reference to the purchase and delivery of his gun collection. When Bailey asked Guevara if he could talk freely in front of his boss, Guevara said "That doesn't matter. He knows about it."

Appellant testified in his own behalf and said he was completely unaware of the transactions between Pina, Guevara and Bailey.

## ISSUES

I. Was the evidence against appellant sufficient to go to the jury?

II. Was it error to admit Guevara's telephone statement to Bailey that "He knows about it."?

III. Was there an abuse of discretion on the part of the trial court in twice refusing to sever appellant's trial from the joint trial with Guevara?

## I.

 Even putting aside Guevara's extra-judicial statement to Bailey, we are convinced that appellant's involvement in the conspiracy is demonstrated by other direct and circumstantial evidence. As recently as *United States v. Turner*, 528 F.2d 143, 162 (CA9 1975), *cert. denied, Grimes v. U. S.*, 423 U.S. 996, 96 S.Ct. 426, 46 L.Ed.2d 371, we held that once a conspiracy is shown to exist, only slight evidence is required to connect a coconspirator. Beyond that, in the same case, we again said that a criminal conspiracy need not be proved by direct evidence and that a common scheme or plan may be inferred from circumstantial evidence, and restated our time honored rule ". . . that circumstantial evidence is not inherently less probative than direct evidence. . . ." *Id.* at 162. It is not our function to disturb the jury's verdict where it could rationally conclude from the evidence presented and the inferences drawn therefrom that a conspiracy had been established beyond a reasonable doubt and that appellant was one of the conspirators. *Turner, supra* at 162.

 Applying these rules to the instant case, we conclude that on the basis of Pina's testimony alone the evidence was sufficient. Appellant talked to Pina about the purchase and sale of the .38 caliber revolver. Appellant was present and overheard many of the conversations between Pina and Guevara leading to the sale of guns. The appellant's complaint to Pina that he should bring all the money and that appellant would supply cartridges for the weapons sold by Guevara, together with the fact that appellant personally sold Pina the Ruger weapon certainly constitutes sufficient evidence from which the jury could conclude that appellant was substantially involved in the sale of many of the 21 guns listed in the indictment. *United States v. Camacho*, 528 F.2d 464 (CA9 1976), fully supports what was said in *Turner*. Appellant's first contention is entirely without merit.

## II.

Next, appellant argues that the admission of Guevara's telephone statement to Bailey [He knows about it.] in referring to appellant's knowledge, constituted error.

On this issue, we are governed by the law as stated in *United States v. Snow*, 521 F.2d 730 (CA9 1975), *cert. denied* 423 U.S. 1090, 96 S.Ct. 883, 47 L.Ed.2d 101 (1976). There, *Snow* appealed from a conviction of conspiring to possess cocaine with intent to distribute. His principal contention on appeal was that the testimony of the government agent regarding incriminating statements of a coconspirator constituted inadmissible hearsay and deprived him of his right to confront witnesses. We there held that otherwise inadmissible declarations of coconspirators should be received in evidence when (a) the declaration was in furtherance of the conspiracy; (b) it was made during the pendency of the conspiracy; and (c) there is independent proof of the existence of the conspiracy and of the connection of the declarant and the defendant to it. *Snow, supra* at 733. Beyond question, there was substantial evidence that the statement was made during the pendency and in furtherance of the conspiracy. The independent proof of the existence of the conspiracy and of appellant and declarant's connection to it, is supplied by Pina's testimony regarding appellant's invitation to buy the .38 caliber gun which Guevara sold to Pina, the sale of the Ruger by appellant to Pina and Pina's testimony on appellant's remarks about bringing the money at once and supplying cartridges for the weapons which Pina had purchased. Beyond doubt this constituted independent proof of participation in the conspiracy by the declarant and appellant.

The appellant, quite apart from the hearsay objection, also argues that the admission of his statement violated his constitutional right to confront and cross-examine his accuser. The *Snow* court, in meeting the same challenge, recognized that admissibility under the coconspirator exception did not automatically demonstrate compliance with the confrontation clause.

Looking to *Dutton v. Evans*, 400 U.S. 74, 88–89, 91 S.Ct. 210, 27 L.Ed.2d 213 (1970), the *Snow* court outlined certain factors to be considered. Applying these factors to the testimony before us, we hold that it was admissible. This is true for the following reasons: (1) Guevara's statement was not an assertion of a past fact; (2) Guevara had personal knowledge of the identity and roles of the other participants in the crime; (3) the possibility of faulty recollection by the declarant was remote, in that declarant was involved; and (4) the circumstances under which the statement was made do not provide reason to believe that declarant misrepresented appellant's involvement in the crime. *See Snow* at 734; *Dutton* at 88–89, 91 S.Ct. 210.

Because the record before us meets the requirements of *Dutton* and *Snow,* we need not discuss the applicability of Federal Rules of Evidence, Rule 801(d)(2)(E) which provides, among other things, that: "A statement is not hearsay if . . . [t]he statement is offered against a party and is . . . a statement by a coconspirator of a party during the course and in furtherance of the conspiracy." Although *Snow* was decided on July 24, 1975, some weeks after the effective date of Rule 801, the rule is not discussed in the opinion. Consequently, we leave an analysis of the rule to a proper case where what seem to be the stricter requirements of *Snow* might come under attack.

## III.

Finally, appellant argues that the district court abused its discretion in twice refusing to grant his motion for a separate trial.

In *United States v. Camacho*, 528 F.2d 464, 470 (CA9 1976), we said:

"Joint trials are the rule rather than the exception; and there is a 'substantial public interest' in the joint trial of persons charged with committing the same offense or with being accessory to its commission. . . . The trial court

'need not have exercised its discretion to order separate trials, unless a joint trial was manifestly prejudicial.'" [Emphasis supplied.]

Appellant's main point on this issue is that the Ruger gun sale, with which he was directly connected, was not one of the sales mentioned in the indictment. He argues that the case against him, other than that sale, consists entirely of inferences and that a separate trial was necessary. An examination of the indictment discloses that the sale of this gun was, in fact, one of the charges in the indictment. Inasmuch as there is direct testimony connecting appellant with the sale of the Ruger, it is manifest that the appellant's participation was not just based on inferences.

He also urges that the failure to separate prevented him from calling codefendant Guevara to testify or to comment on the latter's refusal to testify and that this was prejudicial. In *United States v. Bumatay,* 480 F.2d 1012, 1013–14 (CA9 1973), we held that a district court did not abuse its discretion by refusing to grant a severance motion when there was no showing that a codefendant would actually testify at a severed trial. Here, there is no showing that Guevara would have testified. Neither does *United States v. De La Cruz Bellinger,* 422 F.2d 723 (CA9 1970), *cert. denied* 398 U.S. 942, 90 S.Ct. 1860, 26 L.Ed.2d 278, support appellant's contentions. There the court held that unless a defendant can show that his defense probably would have been benefited from commenting on a codefendant's refusal to testify, denial of the motion to sever is not prejudicial. Here, there was no such showing. Clearly, comment on Guevara's refusal to testify could not in any way affect Pina's testimony on appellant's overt act of selling the Ruger gun.

In these circumstances, the district court did not abuse its discretion in refusing to grant the motion for a separate trial.

CONCLUSION

The judgment of the lower court is affirmed.