954 F.2d 728
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Altin SHELBY, Defendant-Appellant.
 No. 89-50243.
 United States Court of Appeals, Ninth Circuit.
 Submitted Feb. 3, 1992.*
Decided Feb. 11, 1992.
 
 Before WALLACE, Chief Judge, JAMES R. BROWNING and FERGUSON, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 I.
 
 2
 Shelby argues that after the officers received his permission to speak with them and subsequently to search his luggage, the consensual encounter escalated into either a de facto arrest necessitating probable cause or a Terry stop necessitating reasonable suspicion.[1] Shelby claims the officers had neither.
 
 
 3
 The police knew the following after the discussion and search: (1) Shelby and his companion, Wilson, who both looked "very nervous," had been pacing and "scanning" the airport terminal area, separating and then reuniting on a number of occasions, before the officers approached them; (2) after Shelby and Wilson agreed to speak with the officers, they were asked for identification and replied they had none, although Wilson's driver's license was subsequently found in his wallet; (3) Shelby and Wilson gave their true names but admitted they were flying to New Orleans under assumed names, which they could not remember; (4) inside Shelby's suitcase was an empty nylon bag labeled with a Greyhound bus tag in the name of Clarence Bridgewater of New Orleans; Shelby claimed he knew nothing about the bag, which one officer, expert in the methods drug couriers used to transport drugs and money in and out of California, recognized as the type of bag such couriers employed; (5) Shelby had a Federal Express receipt dated that day, addressed to Joann Johnson in New Orleans and purportedly sent by Mary Smith of Los Angeles, which Shelby said was for dishes he had shipped to Louisiana, although he could not remember to whom he had sent them; and (6) drug couriers often brought money into Los Angeles to purchase drugs and then shipped the drugs to their destinations using carriers such as Federal Express. These facts gave the officers a reasonable suspicion that Shelby was involved in drug trafficking. See, e.g., United States v. Sokolow, 490 U.S. 1, 3 (1989).
 
 
 4
 We need not decide whether the officers had probable cause to arrest Shelby at that stage of their investigation because they needed only reasonable suspicion to detain him for the short time it took to retrieve the Federal Express package and subject it to a canine sniff for narcotics.[2]
 
 
 5
 The Fourth Amendment does not require a policeman who lacks the precise level of information necessary for probable cause to arrest to simply shrug his shoulders and allow ... a criminal to escape ... A brief stop of a suspicious individual, in order to ... maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officer at the time.
 
 
 6
 Adams v. Williams, 407 U.S. 143, 145-46 (1972); see also Florida v. Royer, 460 U.S. 491, 506 n. 10 (1983) (plurality opinion) ("[T]he officers, with founded suspicion, could have detained Royer for the brief period during which Florida authorities at busy airports seem able to carry out the dog-sniffing procedure."). The fact that Shelby was handcuffed and moved to an office within the airport did not change the detention into an arrest. See id. at 504-05 ("[T]here are undoubtedly reasons of safety and security that would justify moving a suspect from one location to another during an investigatory detention, such as from an airport concourse to a more private area."); United States v. Patterson, 648 F.2d 625, 632 (9th Cir.1981) (complete but brief restriction of liberty does not necessarily amount to de facto arrest necessitating probable cause). When Shelby was actually arrested, after the sniff proved positive, the officers had the necessary probable cause. See Royer, 460 U.S. at 506 (positive canine sniff "would have resulted in [Royer's] justifiable arrest on probable cause").
 
 II.
 
 7
 Shelby contends the drug sniff was an illegal search. He argues first that the detention of the package while it was subjected to the sniff was "inextricably intertwined" with his own illegal detention. Blue Brief at 20. As we have already explained, however, his detention was not illegal.
 
 
 8
 Second, he distinguishes United States v. Van Leeuwen, 397 U.S. 249 (1970) (warrantless detention of mail while search warrant was being obtained did not violate fourth amendment), on the ground that his package was sent via Federal Express rather than via the United States Postal Service; he claims that because the Federal Express user pays more to ensure speedy delivery, detention of a Federal Express package is a greater intrusion. Our cases do not support his contention. See, e.g., United States v. Licata, 761 F.2d 537, 541 n. 4 (9th Cir.1985) (noting the Van Leeuwen Court "reasoned that the main fourth amendment interest in a mailed package attaches to the privacy of its contents and not to the speed of its delivery"); see also United States v. Aldaz, 921 F.2d 227, 228-29 (9th Cir.1990) (approving seizure and detention of package mailed "express delivery" when authorities had reasonable suspicion of criminal activity).
 
 
 9
 Third, he distinguishes United States v. Place, 462 U.S. 696, 707 (1983) (canine sniff of luggage located in a public place did not constitute a search for fourth amendment purposes), noting the Federal Express office was a private place. However, we have held that authorities may seize and detain packages mailed in a post office--a similarly "private" place--for purposes of subjecting them to a canine sniff if they have reasonable suspicion. Aldaz, 921 F.2d at 229-31. The six factors detailed above gave the officers reasonable suspicion to seize the Federal Express package and subject it to a drug sniff.[3]
 
 III.
 
 10
 Shelby argues the affidavit supporting the warrant to search the Federal Express package did not establish probable cause because it did not recite information regarding the reliability of the narcotics detection dog. The affiant stated only that the dog was trained to identify controlled substances and had "alerted" to the package, indicating the presence of a controlled substance within it.
 
 
 11
 We have held a "validly conducted dog sniff can supply the probable cause necessary for issuing a search warrant only if sufficient reliability is established by the application for the warrant." United States v. Spetz, 721 F.2d 1457, 1464 (9th Cir.1983); see also United States v. Fernandez, 772 F.2d 495, 498 n. 2 (9th Cir.1985) ("[T]he mere fact that a dog has 'hit' on a piece of baggage or cargo does not, in the absence of any factors supporting its reliability, establish probable cause."). However, while an alert alone does not establish probable cause without evidence of the dog's reliability, it may establish probable cause in combination with other probative evidence; probable cause is evaluated in light of the totality of the circumstances known to the issuing magistrate, Illinois v. Gates, 462 U.S. 213, 238 (1983).
 
 
 12
 We have found that once the sniff proved positive, the officers had probable cause to arrest Shelby.[4] The same knowledge gave them probable cause to search the Federal Express package. The issuing magistrate was aware of the information, as it was contained in the affidavit supporting the warrant. The magistrate did not err in finding probable cause to search.
 
 IV.
 
 13
 Finally, Shelby maintains the district judge erred when he ruled that if Shelby testified at the suppression hearing on the issue of his consent to search, cross-examination would not be limited to that issue. Shelby argues that under that ruling, he could have been subject to cross-examination "broad enough to encompass issues of guilt on the substantive charges," which would have violated his fifth amendment rights; he therefore was forced to choose against taking the stand in his own defense. Blue Brief at 26.
 
 
 14
 The trial court did not abuse its discretion in refusing to limit cross-examination to the consent issue. See United States v. Miranda-Uriarte, 649 F.2d 1345, 1353 (9th Cir.1981). The government could have cross-examined Shelby "as to all matters reasonably related to the issues he put [ ] in dispute by his testimony on direct." Id.; see also United States v. Vasquez, 858 F.2d 1387, 1388, 1392 (9th Cir.1988). Further, Shelby's fifth amendment right against self-incrimination would not have been violated simply because some of the reasonably related matters addressed in the cross-examination might have implicated the issue of his guilt of the substantive charges. "A defendant has no right to avoid cross-examination on matters which call into question his claim of innocence." Miranda-Uriarte, 649 F.2d at 1354.
 
 
 15
 AFFIRMED.
 
 
 
 *
 The panel finds this case appropriate for submission without oral argument pursuant to 9th Cir.R. 34-4 and Fed.R.App.P. 34(a)
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Shelby appears to contend that the initial questioning and the search were illegal. The district court, however, found that Shelby and Wilson consented to both. Reporter's Transcript ("R.T.") at p. 130. The district court's factual finding was not clearly erroneous. See United States v. Davis, 905 F.2d 245, 250 (9th Cir.1990)
 
 
 [2]
 According to the officers' testimony, Shelby was initially approached at about 5:25 p.m. The consensual questioning and search took a few minutes. R.T. at 33-34. Shelby was then detained during the hour or so it took the dog's handler to go to the nearby Federal Express office, retrieve the package, subject it to the canine sniff and return to the airport office where Shelby was being held. Id. at 36, 58-60, 84-89, 104-110
 The drug sniff procedure apparently was carried out as quickly as possible. The officers located the dog handler as soon as they had reasonable suspicion; the dog handler went immediately to retrieve the package and subject it to the sniff, and reported back to the officers holding Shelby as soon as the sniff proved positive. Under these circumstances, the delay was not unreasonable and the detention did not ripen into a de facto arrest.
 
 
 [3]
 Similarly, they gave the officers reasonable suspicion to subject the empty nylon bag found inside Shelby's suitcase to a drug sniff
 
 
 [4]
 For this reason, we find meritless Shelby's argument that the delay between the positive drug sniff and the obtaining of the warrant was unreasonable because he was illegally detained during that time