## LONERGAN v. UNITED STATES.
### No. 8218.

Circuit Court of Appeals, Ninth Circuit.
March 21, 1938.

Rehearing Denied April 29, 1938.

GARRECHT, Circuit Judge, dissenting.

———◇———

Donald A. McDonald and Carl B. Luckerath, both of Seattle, Wash., and Oscar L. Willett and Pierce Lonergan, both of Los Angeles, Cal., for appellant.

J. Charles Dennis, U. S. Atty., and F. A. Pellegrini and Gerald Shucklin, Asst. U. S. Attys., all of Seattle, Wash.

Before WILBUR, GARRECHT, and MATHEWS, Circuit Judges.

MATHEWS, Circuit Judge.

Appellant was indicted, tried, convicted, and sentenced for violating section 215 of

the Criminal Code, 18 U.S.C.A. § 338. He appealed. We affirmed the judgment of conviction. 9 Cir., 88 F.2d 591. The Supreme Court granted certiorari, 58 S.Ct. 18, reversed our judgment, and remanded the case for further proceedings. 58 S.Ct. 430, 82 L.Ed. ——.

We held that 28 of appellant's assignments of error (numbered 5, 9 to 25, inclusive, and 31 to 40, inclusive) did not conform to our rule 11 and, therefore, should not be considered. The Supreme Court held that "some, if not all," of these assignments were "sufficiently definite and formal to demand consideration."

Four of them (assignments 5, 20, 34, and 36) were specified in appellant's brief, but were not discussed or argued, in his brief or orally. We have nevertheless considered these assignments, and find no merit in them.

■ Assignments 9 to 15, inclusive, are to the admission of and refusal to strike out the seven letters which appellant was found guilty of having mailed or caused to be mailed for the purpose of executing the fraudulent scheme described in the indictment. Objections thereto were as follows:

To the letter set out in assignment 9: "Objected to on the ground no sufficient foundation laid in connection with the defendant Lonergan to show that it was authorized or that he acknowledged mailing this letter."

To the letter set out in assignment 10: "There is no sufficient identification, the mere fact that a man gets a letter, there is no proof sufficient to connect this defendant with it."

To the letter set out in assignment 11: "I object, your Honor, on the ground there is nothing to show that Lonergan ever appears on this letter, or anything ever brought to his attention or in any way binding on him, no proper foundation has been laid for the introduction of this against defendant Lonergan."

To the letter set out in assignment 12: "I object on behalf of the defense, if your Honor please, not adequately identified as having been introduced into the mails."

To the letter set out in assignment 13: "Objected to, no foundation connecting defendant."

To the letter set out in assignment 14: "Objected to as not having been sufficiently identified, and hearsay. * * * If your Honor please, there is no sufficient identification yet as to who sent it, no foundation laid, and I insist there still isn't sufficient evidence to identify this."

To the letter set out in assignment 15, no objection was made.

The objections made were properly overruled. The letters were sufficiently identified, and a sufficient foundation was laid for their introduction. There was evidence that they were composed, written, prepared for mailing, and mailed by persons acting under appellant's supervision and direction; that appellant, in this way, caused the letters to be mailed; and that he did so for the purpose of executing the fraudulent scheme described in the indictment.

■ Assignments 16, 17, and 18 are to the admission of and refusal to strike out Exhibits 75, 76-A and 76-B. The government first introduced Exhibit 76-A, then Exhibit 76-B, and, finally, Exhibit 75. Exhibit 76-A was a letter dated August 20, 1934, addressed to "Battle, Hulbert & Helsell * * * Attention: Mr. Joseph E. Gandy," and signed "Louis Martin Co. [by] J. R. Walsh—(M.L.H.)." Messrs. Battle, Hulbert, Helsell & Bettens were attorneys representing A. M. Atwood, one of the "investors" who, according to the government's evidence, were defrauded by the scheme described in the indictment. Joseph E. Gandy was a member of the firm of Battle, Hulbert, Helsell & Bettens. Louis Martin Company was a corporation which, according to the government's evidence, was dominated, controlled, and used by appellant as one of several agencies or instrumentalities through which he executed the fraudulent scheme. J. R. Walsh was the nominal "head" of Louis Martin Company, but, according to the government's evidence, took orders from appellant and acted under appellant's supervision and direction. Mary L. Herman (M.L.H.) was Walsh's stenographer. The letter (Exhibit 76-A) reads as follows:

"Following is the information requested by you regarding the transactions for the account of Mr. A. M. Atwood on August 9, 1934.[1]

---

[1] August 9, 1934, was the date of the transactions referred to. The request for information was dated August 17, 1934.

644

| "Option | Price | Amount | Sold To |
|---------|-------|--------|---------|
| 6 Sept. | 44¢ | $1,320.00 | Jordan Co.[2] |
| 4 March | 44¢ | 880.00 | Jordan Co. |

"These transactions took place at Seattle, Washington. Any further information you may wish, please advise us."

Exhibit 76-B was a letter dated August 21, 1934, addressed to A. M. Atwood, signed "Louis Martin Co. by J. R. Walsh—(M.L. H.)," reading as follows:

"Your communication of the 19th [3] day of August, making certain statements through your attorneys regarding the manner in which your silver contract account with Louis Martin Co. had been handled, has been received.

"This is to advise you that upon your depositing with us the sum of two thousand two hundred and thirty eight dollars & seventy five cents ($2,238.75) representing ninety per cent (90%) of the contract price of the silver contracted by you, your account will be reinstated for the amount of silver and at the price contracted by you, provided, however, that you comply with the terms, conditions and provisions upon which you originally contracted the silver and particularly the terms of your contract as evidenced by your signature card.

"The deposit of $2,238.75 with us must be made by you on or before noon, Thursday, August 23, 1934."

Appellant objected to Exhibit 76-A on the ground "that it is not part of the *res gestæ* in this case, that it is referring to a past transaction and has no connection with the defendant Lonergan as shown thus far, and so far it has been insufficiently identified." He objected to Exhibit 76-B on the ground "that it has not been properly identified and no foundation laid, doesn't connect the defendant with any transaction, nothing to show he had any knowledge of it, and it relates to past events." These objections were not well founded. The exhibits were not hearsay, they were sufficiently identified, they were sufficiently connected with appellant, a sufficient foundation was laid for their introduction, and they were properly admitted.

From these letters and from other evidence in the record it was and is apparent that they (Exhibits 76-A and 76-B) were in response to a communication from Atwood's attorneys, and that, to get a proper understanding of them, it was necessary to know what had been said in that communication. Accordingly, after Exhibits 76-A and 76-B had been admitted, the government offered, and the court admitted, as Exhibit 75, a carbon copy of the communication referred to. This was dated August 17, 1934, was addressed to appellant, and was signed "Battle, Hulbert, Helsell & Bettens, by Joseph E. Gandy." Gandy testified that the original had been sent, by registered mail, to appellant and a copy thereof, by registered mail, to Louis Martin Company. Registry return receipts [4] were attached to and made part of Exhibit 75. This exhibit reads as follows:

"We are attorneys for Mr. A. M. Atwood who for approximately the last year and a half had been buying and selling silver on the Seattle Metal Exchange through Louis Martin Company, silver brokers.

"During the middle of July last, Mr. Atwood had on hand silver futures, as follows:

1,000 ounces—September
2,000 " — "
2,000 " —March, 1935.

with a total credit margin of $324.93, in cash.

"By reason of an alleged dumping of several hundred thousand ounces of silver on the Seattle market at approximately that time, the market was driven down each day to the maximum permitted under the law, with the result that on July 28th, Louis Martin Co., advised Mr. Atwood that an extra margin requirement was necessary to maintain his silver options and that it must be put up not later than Monday, July 30th, and failing to do so, would necessitate the selling of his silver options at the market.

"After conferences with Mr. Pierce Lonergan and Mr. J. R. Walsh, Mr. Atwood deposited $400.00 in the Trust Department of the First National Bank, as an extra margin, conditioned upon the performance of your contract and by the delivery by you of 3,000 ounces of September option

---

[2] "Jordan Co." was an assumed name used by appellant and his brother-in-law, George T. Goggin. Thus, according to the government's evidence, sales by Louis Martin Company (appellant's corporation) to Jordan Co. were, in effect, sales by appellant to himself.

[3] This was a typographical error. The only communication sent by or received from Atwood's attorneys on this subject was their letter of August 17, 1934. For "19th," therefore, read "17th."

[4] These show delivery of the original to appellant and of the copy to Louis Martin Company on August 18, 1934.

bullion .999 and 2,000 ounces of March option bullion .999 fine.

"Mr. Atwood thus had covered the required margins. On Monday, August 6th, Mr. Atwood had a conference with Mr. Pierce Lonergan, wherein Mr. Lonergan informed Mr. Atwood that the Seattle Metal Exchange was broke; that Louis Martin Co. was broke, and that there was an impending law suit involving about $150,000, which suit would tie up all the funds in Louis Martin Co., and the Seattle Metal Exchange, and that Mr. Atwood had better hurry and get his $400 deposit back before these litigants tied it up and attached it, Mr. Lonergan at that time informing Mr. Atwood that the attorneys for such litigants were in conference, and that the suit would be started immediately. Accordingly, Mr. Atwood attempted to reach Mr. Walsh in order to secure a release of his deposit at the First National Bank and was unable to do so on that day.

"On August 9th, however, Mr. Atwood reached Mr. Walsh, who made arrangements for Mr. Atwood to take back his $400.00, deposit in the First National Bank. Mr. Atwood took Mr. Walsh's letter authorizing the withdrawal of the $400.00 deposit and obtained such deposit.

"Within an hour after Mr. Atwood had withdrawn his deposit and sold his silver options at Mr. Lonergan's and Mr. Walsh's pleadings, the President proclaimed the nationalization of silver at 50.01.

"The allegations and persuasions made by Mr. Pierce Lonergan and Mr. J. R. Walsh to Mr. Atwood were obviously fraudulently made and were made solely with the intent to get Mr. Atwood out of the market in order to buy his silver at a low price in order that the same might be sold upon the nationalization of silver,

which latter event Mr. Pierce Lonergan had been expecting for some time.

"Reference is here made to Rem.Rev. Stat. of the State of Washington, § 2477, and as attorneys for Mr. A. M. Atwood, and pursuant to said statute,[5] we herewith demand that the Seattle Metal Exchange and Louis Martin Company, or either, or both, furnish Mr. Atwood a written statement containing the names of the persons to whom his silver options were sold, the time when, the place where, the amount of, and the price at which the same was sold. You may comply with this demand by furnishing the same within 48 hours to the writer, at this office.

"You are further advised that Mr. A. M. Atwood was defrauded by the misrepresentations of Mr. Pierce Lonergan and Mr. J. R. Walsh and that he will seek legal redress, · if necessary, to recover his damages sustained by him by reason of such fraudulent representations."

Appellant's objection to Exhibit 75 was as follows: "I direct the court's attention to the fact that neither one of [the registry return receipts] shows the defendant Lonergan's signature;[6] in fact addressed to the Louis Martin Company and received by officers of the Louis Martin Company; obviously the same lack of identification exists now as before. It is also objectionable for the reasons that we are not interested in attorneys' opinions about transactions or their conclusions or anything else. It is pure conclusions of third parties and happened subsequently[7] and shouldn't be admitted. * * * I renew my objection as stated before. * * * Your Honor, these are purely statements of third parties, and are self-serving."

There was no merit in these objections. Exhibit 75 was part of a correspondence

---

[5] Section 2477 of Remington's Revised Statutes provides: "Every person, whether in his own behalf, or as the servant, agent or employee of another person, within or outside of this state, who shall buy or sell for another, or execute any order for the purchase or sale of any commodities, securities or property, upon margin or credit, whether for immediate or future delivery, shall, upon written demand therefor, furnish such principal or customer with a written statement containing the names of the persons from whom such property was bought, or to whom it has been sold, as the case may be, the time when, the place where, the amount of, and the price at which the same was either bought or sold; and if

such person shall refuse or neglect to furnish such statement within forty-eight hours after such written demand, such refusal shall be prima facie evidence as against him that such purchase or sale was made in violation of section 2476." Section 2476 makes it a crime, punishable by imprisonment in the penitentiary, for any one to open, conduct, or carry on a bucket shop.

[6] One of the receipts was signed "Pierce Lonergan," by his agent. The other was signed "Louis Martin Co.," by its agent. Delivery to appellant of the original letter, of which Exhibit 75 is a copy, was conclusively established. There was no lack of identification.

[7] Exhibits 75, 76-A, and 76-B were

some of which (Exhibits 76-A and 76-B) was already in evidence, and all of which was clearly admissible. Compare Salinger v. United States, 272 U.S. 542, 547, 47 S.Ct. 173, 71 L.Ed. 398; Rumble v. United States, 9 Cir., 143 F. 772, 780.

Cases cited by appellant[8] are not in point. None of them involved a letter addressed to and answered by the accused. In none of them did it appear that the offered letter or document was needed—as, in this case, Exhibit 75 was needed—to explain or clarify letters or documents already in evidence, emanating from the accused. It is idle to pretend that Exhibits 76-A and 76-B did not come from appellant. The record is replete with evidence that their author, Louis Martin Company, was appellant's agent and mouthpiece. Hence, Exhibits 76-A and 76-B were not "third party records," as claimed by appellant, but were his, appellant's, own answer to Exhibit 75.

■ Assuming, without deciding, that opinions and conclusions stated in Exhibit 75 were not competent evidence in this case, the rest of the exhibit was not thereby rendered inadmissible. The most appellant could ask was that the objectionable part— the opinions and conclusions—be excluded. He made no such request, but addressed his objection to the entire exhibit, taking then, as now, the untenable position that all and every part of it must be excluded.

■ Assignments 19, 21, 31, and 32 are to the admission of and refusal to strike out the testimony of W. G. Coventry, Luella K. McFaddin, J. I. Romer, and Mary E. McGrew concerning representations made to them by persons who, according to the government's evidence, were agents of appellant and made such representations for the purpose of executing the fraudulent scheme described in the indictment. Appellant objected to this testimony, on the ground that he was not present when the representations were made. The objection was properly overruled.

■ Assignments 22 and 23 are to the admission of and refusal to strike out four checks drawn by Gill & Co.[9] and five checks drawn by Louis Martin Company, payable to and endorsed by appellant. This evidence was objected to on the ground that it was irrelevant and immaterial. There was no merit in the objection. If for no other purpose, the evidence was admissible to show connection between appellant and Gill & Company, and between appellant and Louis Martin Company.

■ Assignments 24 and 25 are to the admission of and refusal to strike out the testimony of Mildred Spear Carroll and Luella K. McFaddin, to the effect that they had never recovered the amounts—$6,000 and $200, respectively—which they had "invested" in reliance upon the false and fraudulent representations which, according to the government's evidence, appellant caused to be made. This testimony was objected to on the ground that it was incompetent, irrelevant, and immaterial. The objection was properly overruled.

■ Assignments 33, 35, 37, 38, 39, and 40 are to the denial of motions, made at the conclusion of the government's case, whereby, in effect, appellant asked the court to strike out all of the government's evidence. Most of this evidence had been received without objection, and all of it was, we think, clearly admissible. The motions were properly denied.

Judgment affirmed.

On Petition for Rehearing.

PER CURIAM.

Rehearing denied.

GARRECHT, Circuit Judge (dissenting.)

A re-examination of the record and opinion in this case has caused me to conclude that serious error was committed upon the trial, particularly in the admission in evidence of Government's Exhibit 75. This letter contained hearsay statements that were not admissible in evidence and which were so extremely damaging in character that they could not have failed to improperly influence the jury.

A rehearing should be granted.

dated August 17, 1934, August 20, 1934, and August 21, 1934. All were within the period covered by the indictment letters—November 13, 1933, to August 24, 1934.

[8] Wells v. United States, 9 Cir., 257 F. 605; St. Clair v. United States, 9 Cir., 23 F.2d 76; Downing v. United States, 9 Cir., 35 F.2d 454; Harrison v. United States, 6 Cir., 200 F. 662; Hart v. United States, 2 Cir., 240 F. 911; Granzow v. United States, 8 Cir., 261 F. 172; Reineke v. United States, 8 Cir., 278 F. 724; Nicola v. United States, 3 Cir., 72 F.2d 780.

[9] "Gill & Company" was a name used by Louis Gill, who, according to the government's evidence, was one of several agents through whom appellant executed the fraudulent scheme described in the indictment.