**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Peter SCHMIT, Defendant–Appellant.**

**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Rex Lee SWINFORD,
Defendant–Appellant.**

**Nos. 88–1029, 88–1058.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Jan. 9, 1989.

Decided July 26, 1989.

Albert W. Brodie, Sacramento, Cal., and
Richard W. Nichols, McDonough, Holland

& Allen, Sacramento, Cal., for defendants-appellants.

Kristin Sudhoff Door and Nancy Simpson, Asst. U.S. Attys., Sacramento, Cal., for plaintiff-appellee.

Before BROWNING, BEEZER and KOZINSKI, Circuit Judges.

JAMES R. BROWNING, Circuit Judge:

Peter Matthew Schmit and Rex Lee Swinford appeal their convictions of conspiring in violation of 21 U.S.C. § 846 to possess, manufacture and distribute methamphetamine and other controlled substances in violation of 21 U.S.C. § 841(a)(1).

## I. *The Hearsay Claims*

Appellants' principal contention is that the district court erred in admitting a tape recorded statement and handwritten notes on pages of a desk calendar as "statement[s] by a coconspirator of a party during the course and in furtherance of the conspiracy." Fed.R.Evid. 801(d)(2)(E).

To satisfy the Rule "[t]here must be evidence that there was a conspiracy involving the declarant and the nonoffering party, and that the statement was made in the course and in furtherance of the conspiracy." *Bourjaily v. United States*, 483 U.S. 171, 107 S.Ct. 2775, 2778, 97 L.Ed.2d 144 (1987).[1] "[W]hen the preliminary facts relevant to Rule 801(d)(2)(E) are disputed, the offering party must prove them by a preponderance of the evidence." *Id.* at 2779. In making these preliminary factual determinations the court "may examine the hearsay statements sought to be admitted ... 'and give [them] such weight as [its] judgment and experience counsel.'" *Id.* at 2782 (quotation omitted).

### A. *The Tape Recorded Statement*

Appellants contend the district court erred in denying their motion to suppress a tape recorded statement concededly made by Peter Gary Schmit (hereinafter Gary Schmit), son of appellant Peter Matthew Schmit (hereinafter appellant Schmit), and in a search of the home where both father and son lived.

Appellants argue the government failed to establish the tape was made "during the course" and "in furtherance of" the conspiracy. The district court's conclusion that the government established these prerequisites of admissibility under Rule 801(d)(2)(E) by a preponderance of the evidence, including the contents of the statements themselves, is reversible only for clear error. *United States v. Smith*, 790 F.2d 789, 794 (9th Cir.1986); *United States v. Moody*, 778 F.2d 1380, 1382 (9th Cir. 1985).[2]

■ (1) We first consider appellants' contention that the evidence was not sufficient to allow the trial court to find the state-

**1.** This court subsequently held "there must be some evidence, aside from the proffered [hearsay] statements, of the existence of the conspiracy and the defendant's involvement in it." *United States v. Gordon*, 844 F.2d 1397, 1402 (9th Cir.1988); *see also United States v. Silverman*, 861 F.2d 571, 577 (9th Cir.1988). Appellants do not challenge the adequacy of the evidence in this respect.

**2.** *United States v. Gordon*, 844 F.2d 1397, 1402 (9th Cir.1988), states that the standard for review of a finding that a declaration was made "in furtherance of" a conspiracy "is somewhat unclear" in light of the Supreme Court's decision in *Bourjaily*, 107 S.Ct. at 2782. It is apparent this statement refers to the standard for reviewing a finding that a conspiracy existed—

an issue not before us. Prior to *Bourjaily*, we examined the "existence of a conspiracy" finding de novo. *See United States v. Rosales*, 584 F.2d 870, 872 (9th Cir.1978). *Bourjaily* may have reduced this standard to clear error. However, before *Bourjaily* we reviewed "during the course" and "in furtherance of" findings under the clearly erroneous standard, as the cases cited in the text demonstrate, and *Bourjaily* casts no doubt on the appropriateness of this standard in reviewing such findings. *See United States v. Yarbrough*, 852 F.2d 1522, 1535 (9th Cir.1988) (decided after *Bourjaily*). *United States v. Vowiell*, 869 F.2d 1264 (9th Cir.1989), is not to the contrary—the issue under review was the correctness of the district court's legal conclusion as to when a conspiracy to assist an escape ends. *Id.* at 1267.

ment was recorded "during the course" of the conspiracy.

There was proof that between 1982 and June 1986, under the leadership of Gary Schmit, the conspirators completed at least two "runs" of a chemical process producing methamphetamine and began a third. These runs took place at two and possibly three locations and produced methamphetamine valued at as much as two million dollars. In November 1985 Gary Schmit purchased a microcassette recorder and tapes. In June 1986 the tape with Gary Schmit's recorded statement was seized in a search of his home pursuant to a warrant. The statement referred to "runs" completed before the tape was dictated and a proposed future run. Discovered and seized with the tape were documents containing formulae for the production of methamphetamine, lists of glassware and equipment required for the process, receipts reflecting the purchase of glassware and chemicals, records of temperatures and times of various reactions in processing methamphetamine, calendar sheets recording payments totalling $300,000 to "Dad" (alleged to be appellant Schmit), and 86 pounds of methamphetamine valued at nearly one million dollars.

Gary Schmit's taped statement began: "I am putting this on tape because I've got a lot to say regarding what we're about to do and what we're gonna do and who's involved." The lengthy and somewhat rambling discourse that followed included: a description of Gary Schmit's "tentative proposal" that he supply "the equipment and the major ingredients that [he] need[ed]," and guarantee "150 pounds out of a 200 pound potential"; an analysis of the "pros and cons" of conducting the proposed "run"; the risks of discovery; an estimate of how much evidence narcotics agents might have gathered regarding the group's past activities; an evaluation of the possibility that particular members of the group

might not be reliable; comments as to who should have a voice in the decision whether to proceed; the weight to be given their opinions in light of the contribution each had made to earlier efforts; the location of the proposed "run"; and the need to finance it.

As appellants point out, there was no direct proof of when the tape was purchased or when the statement was recorded. We have no doubt, however, that the circumstances were sufficient "to support an inference," *United States v. Layton*, 720 F.2d 548, 555 (9th Cir.1983), that the tape was one of those Gary Schmit purchased along with a recorder on November 6, 1985 and was used by him to record his statement before the conspiracy ended with the search of his home and the seizure of the tape six months later.

■ Appellant Schmit argues it could not be determined whether the statement was recorded in the course of the conspiracy because it was unclear from the statement whether Gary Schmit was "talking about a conspiracy that has commenced and is ongoing, one that has terminated, or one that is only contemplated." Appellant Swinford's argument is only slightly different: he argues the statement itself demonstrates "a meth conspiracy involving Gary Schmit and others had existed at one time, that its activities had been concluded and shut down, and that commencement of a new meth conspiracy was being contemplated involving some but not necessarily all of the same participants.... [T]he transcript does not support a finding that a meth conspiracy was, *at the time the tape was dictated*, in existence." (Original emphasis.) The arguments of both appellants confuse the various "runs" conducted by the group with the group's continuing conspiracy to manufacture and distribute methamphetamine of which each "run" was but a part.[3]

3. Appellant Swinford makes the additional argument that it was unreasonable to conclude Appellant Swinford was a part of the conspiracy at the time the tape was dictated because there was evidence he and Gary Schmit had a falling out in 1984 or 1985. Gary Schmit's recorded statement and a memorandum he wrote to another conspirator indicates Gary Schmit was afraid Swinford might be talking to the authorities and defaulting on debts owed Gary Schmit. Despite these disagreements, evidence seized at Swinford's property one month after the tape was

We are satisfied the trial court's conclusion the taped statement was made "during the course" of the conspiracy was not clearly wrong.

■ (2) Appellants' contention that the evidence was not sufficient to allow the trial court to find the statement was recorded "in furtherance of the conspiracy" raises more serious questions. Appellants argue the recorded statement cannot be regarded as made "in furtherance of the conspiracy" because it consists of "casual admissions of culpability" and "idle chatter." [4]

It is apparent that the portions of the statement referred to earlier were not mere "idle chatter" or "casual admissions of culpability" but were relevant to various aspects of a projected "run" for the production of methamphetamine—including the size of the proposed "run"; who was to decide whether it would be pursued; where it was to occur; and, perhaps predominantly, problems of risk and security to which past events were obviously relevant. *See United States v. Tille,* 729 F.2d 615, 620 (9th Cir.1984); *United States v. Haldeman,* 559 F.2d 31, 110–11 (D.C.Cir.1976) (en banc) (per curiam); *Zamloch v. United States,* 193 F.2d 889, 891 (9th Cir.1952).

Appellants moved to suppress the statement as a whole, and the district court denied their motion. Appellants did not submit to the district court and the district court did not decide whether particular passages in the statement may have been excludable. In these circumstances the fact that some portions of the statement may have been "idle chatter" or casual admissions of culpability" would not render denial of the motion to suppress reversible error. As this court said in a similar case many years ago:

discovered—including methamphetamine in various stages of production, lab equipment with Swinford's fingerprints on it, and a notebook Swinford used to record drug sales—indicate Swinford was still part of the conspiracy after the tape was dictated.

4. *Layton,* 720 F.2d at 556; *see also United States v. Bibbero,* 749 F.2d 581, 583–84 (9th Cir.1984);

Assuming, without deciding, that opinions and conclusions stated in [the exhibit] were not competent evidence in this case, the rest of the exhibit was not thereby rendered inadmissible. The most appellant could ask was that the objectionable part—the opinions and conclusions—be excluded. He made no such request, but addressed his objection to the entire exhibit, taking then, as now, the untenable position that all and every part of it must be excluded.

*Lonergan v. United States,* 95 F.2d 642, 646 (9th Cir.1938); *see also United States v. Gentile,* 525 F.2d 252, 259 (2d Cir.1975) (trial judge not required to separate excludable portions of statement when defendant failed to make a specific objection); *see also* I Wigmore § 18 at 834.

■ Appellants object that the government offered no proof the tape was played for others or used in any other way to "advance the objectives of the conspiracy." *Layton,* 720 F.2d at 556. The government need not prove the statement furthered the conspiracy in fact; it is enough if Gary Schmit made the statement for that purpose. *Id.* at 556 n. 5. The district court could infer from the content and context of Gary Schmit's statement that he intended to use it in advancing the common enterprise to produce and distribute methamphetamine. *See id.* at 557. Gary Schmit was the leader of the criminal enterprise. The content of the statement indicates it was dictated at a critical juncture in the history of that enterprise. The participants faced a decision either to end the undertaking or to initiate a new production effort. The statement catalogued and analyzed factors relevant to that decision. It was preserved with other records of the planning and execution of the enterprise's activities.

*United States v. Foster,* 711 F.2d 871, 880 (9th Cir.1983); *United States v. Fielding,* 645 F.2d 719, 726–28 (9th Cir.1981) (per curiam); *United States v. Castillo,* 615 F.2d 878, 882–83 (9th Cir.1980); *United States v. Eubanks,* 591 F.2d 513, 519–21 (9th Cir.1979) (per curiam); *United States v. Moore,* 522 F.2d 1068, 1077 (9th Cir. 1975).

As the trial judge asked counsel, "What other reasons can you imagine this statement was made ... if not in connection with a manufacturing run?" Defending counsel responded, "I frankly don't know why he would record it." Government counsel pointed out that Gary Schmit

> is the one who was planning this conspiracy and he's the one keeping the records. He was the one who was deciding when the run ought to take place, where it ought to take place, who it was that was going to be paid, what percentage they were going to have. What weight other people's comments were supposed to have as to when the run was going to take place and where it was going to take place. He was the one, who from all the rest of the evidence, was keeping the records for this conspiracy and this was just simply another type of record that he was keeping.

The court agreed, finding the oral record admissible as the functional equivalent of a ledger. We cannot say the district court "could not reasonably have come to [this] conclusion." *Tille,* 729 F.2d at 620.

■ A microcassette tape, like a note or a ledger, is an accepted place to record information. *United States v. Gomez–Soto,* 723 F.2d 649, 655 (9th Cir.1984). Ledgers, books of record, and notes containing information relevant to the conspiracy may be admissible against coconspirators as statements in furtherance of the conspiracy without evidence they were in fact consulted or otherwise communicated. *United States v. Valles–Valencia,* 811 F.2d 1232, 1237–38, *amended,* 823 F.2d 381 (9th Cir.1987); *United States v. Jennell,* 749 F.2d 1302, 1307 (9th Cir.1984).

The trial judge's inference, drawn from all the circumstances, that the taped recording of Gary Schmit's statement was such a record of information relevant to the activities of the common enterprise, was not clearly wrong, whether or not the inference is one we would have drawn were we the fact finders. According the trial court's finding the deference it is due, "[n]o firm and definite conviction of mistake arises from review of this record." *Smith,* 790 F.2d at 795 (internal quotation and citation omitted).[5]

### B. The Calendar Pad Notes

Appellant Schmit objects to the admission under Fed.R.Evid. 801(d)(2)(E) of pages from desk top calendars for 1984 and 1985 bearing notations of payments of over $300,000 to "Dad," also seized in the search of Gary Schmit's home.

He argues the evidence was not sufficient to show (1) that the declarant was coconspirator Gary Schmit, as the government contends, or (2) that appellant Schmit was the "Dad" to whom the notations referred.

■ Appellant relies principally upon our holding in *United States v. Mouzin,* 785 F.2d 682, 693 (9th Cir.1986), that "[t]he government's failure to identify the author or authors of the ledger entries rendered the ledger inadmissible under Rule 801(d)(2)(E)."[6]

In *Mouzin,* the only evidence of the identity of the person making the entries on the ledger sought to be admitted was the presence on the ledger of the fingerprint of the coconspirator in whose home the ledger was found, along with fingerprints of many others, including defense counsel. *Id.* at 692–93. The evidence supporting the finding of the district court in this case that Gary Schmit was the author of the calendar notes was significantly greater. In this case, as in *Mouzin,* the document was found in the home of the person the government sought to identify as the de-

**5.** Since the evidence meets the requirements for admissibility under Fed.R.Evid. 801(d)(2)(E), we need not independently inquire into its reliability for purposes of the confrontation clause. *Bourjaily,* 107 S.Ct. at 2783.

**6.** The stated reason for the holding in *Mouzin* was that "[k]nowledge of the identity of the declarant is essential to a determination that the

declarant is a conspirator whose statements are integral to the activities of the alleged conspiracy." 785 F.2d at 693. Since in this case there was sufficient proof of the declarant's identity, it is unnecessary to consider whether such proof would be necessary where as here other evidence establishes the requisite relationship of the declarant to the conspiracy.

clarant. Unlike the ledger in *Mouzin*, however, the notations in this case contained references to a distinctive code word "puppy," used by Gary Schmit in referring to phenyl-2–propanone (P2P). In addition, the notations recorded payments of large sums to "Dad"; and other evidence, including the tape recording, admittedly authorized by Gary Schmit, established both that Gary Schmit referred to appellant as "Dad," and that Gary Schmit had made substantial payments to "Dad" as part of the conspiracy. In light of this evidence we cannot hold clearly erroneous the district court's express finding that Gary Schmit authored the calendar notations.

The evidence that Gary Schmit was the author of the notations, plus the overwhelming evidence offered at trial that Gary Schmit was a participant in the conspiracy, indeed its leader, was sufficient to establish that the notations were made by a coconspirator as required for admission under Rule 801(d)(2)(E). Appellants have not challenged the sufficiency of the evidence to show the notations were made during and in furtherance of the conspiracy.[7]

■ (2) The circumstantial evidence, including that already mentioned, was also sufficient to establish appellant Schmit was the "Dad" referred to in the calendar notations. It is conceded appellant Schmit was in fact Gary Schmit's father, and that the son commonly referred to his father as "Dad." There was evidence that appellant Schmit had participated in the joint enterprise, including references to Gary Schmit's taped statement to the substantial contributions "Dad" had made to the common enterprise, to money "Dad" had received from the enterprise, and to money the enterprise still owed him.

## II. Other Issues

### A. Issues Not Raised Below

■ We decline to review several additional grounds not raised below upon which appellant Swinford now attacks his convictions. Appellant waived his argument there were material omissions in the affidavit used in obtaining the search warrant (Fed.R.Crim.P. 12(f); *United States v. Restrepo–Rua*, 815 F.2d 1327, 1329 (9th Cir.1987) (per curiam)) and has shown no cause to grant relief from the waiver. See *United States v. Gonzales*, 749 F.2d 1329, 1336 (9th Cir.1984). We find no "plain error" in the admission into evidence without objection of glassware and chemicals found in abandoned trucks in Corning, California. Fed.R.Evid. 103(a)(1), 103(d); *United States v. Morris*, 827 F.2d 1348, 1350–51. (9th Cir.1987). Similarly there was no "plain error" in the denial of appellant Swinford's challenge to the sufficiency of the evidence, which he failed to renew at the close of the case. *United States v. Comerford*, 857 F.2d 1323, 1324 (9th Cir. 1988) (per curiam). Gary Schmit's recorded statement implicated Swinford, and methamphetamine and the equipment and chemicals used to manufacture methamphetamine were found at Swinford's property. Clayton Chandler testified he met Swinford at a methamphetamine lab on property owned by Gary Schmit and that he watched Swinford load a truck with chemicals used in the manufacturing process.

We do not consider Swinford's claim of ineffective assistance of counsel. Counsel was not obviously inadequate. See *United States v. Wagner*, 834 F.2d 1474, 1482–83 (9th Cir.1987). The record is not sufficient for us to consider Swinford's claim that his counsel failed to prepare him to testify, failed to advise him of his fifth amendment rights, and failed to file certain pretrial motions. Such issues must be raised in a collateral proceeding in which a record can be developed. *United States v. Johnson*, 820 F.2d 1065, 1073–74 (9th Cir.1987).

### B. The Fee Assessment

Each appellant was sentenced to pay a fee under 18 U.S.C. § 3013. We since have

---

**7.** Swinford raises a similar objection to the admission of handwritten lists of chemicals, glassware and formulae for manufacturing methamphetamine. Here, too, substantial circumstantial evidence identified the declarant as Gary Schmit. The writings referred to "Rex Sailor," the name used by Gary Schmit in referring to

Swinford. The evidence indicated Gary Schmit was the leader of the conspiracy and responsible for keeping the records. The records were found in a filing cabinet in Gary Schmit's home. Some were submitted to a handwriting expert who testified they were written by Gary Schmit.

held the statute unconstitutional. *United States v. Munoz–Flores*, 863 F.2d 654, 661 (9th Cir.1988). Since 18 U.S.C. § 3013 is "as inoperative as though it had never been passed," *id.* at 15168 (internal quotation omitted), the sentences are vacated insofar as they impose a fee under the statute.

The sentence is VACATED IN PART. The convictions are AFFIRMED.